Deborah **MICHAEL**,
Petitioner–Respondent,

v.

Dennis **MICHAEL**,
Respondent–Appellant.

No. 55432.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 1, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1990.

Application to Transfer Denied
July 31, 1990.

Melody E. Noel, St. Louis, for respondent-appellant.

Paul H. Schram, St. Louis, for petitioner-respondent.

PUDLOWSKI, Presiding Judge.

This is an appeal from a judgment and decree of dissolution which awarded respondent the majority of marital property and awarded appellant $500.00 in attorney's fees and no maintenance.

The evidence adduced at trial established that appellant and respondent were married in August 1972 and separated in April

1987. There were no children born of this marriage. Both appellant and respondent are well educated. Appellant holds a baccalaureate degree in political science and a master's degree in journalism. Respondent holds a baccalaureate degree in journalism and a master's degree in public administration.

In 1972, on the day following the parties' marriage, the couple moved to Little Rock, Arkansas where respondent was going to work for Southwestern Bell Corporation. While living in Little Rock, appellant was employed as a reporter for a local newspaper.

In June 1974, respondent received a promotion and was transferred back to St. Louis. In St. Louis, appellant worked for APC Skills Company and then for Maritz, Inc. In 1978, appellant was fired from Maritz, Inc. Upon appellant being fired, the couple agreed that appellant would not seek outside employment but instead would devote time to writing fiction. In that same year respondent received another transfer and the couple moved to Oklahoma City.

While living in Oklahoma, appellant continued to pursue a writing career, however, later abandoned this endeavor without ever having written a chapter in a book or a scene in a play. After giving up the attempt at writing, appellant worked briefly in a food store and spent 8–9 months working free-lance public relations. When appellant was not employed outside of the home, the couple agreed that appellant would be responsible for the general upkeep of the house and also for the preparation of the evening meal. Appellant spent several hours a day preparing the couple's dinner. Respondent claimed that appellant's other domestic chores were very lax. For two years while the couple was living in Oklahoma appellant drove respondent to and from work. However, for the rest of the mornings, appellant slept until 10 or 11:00 a.m.

In 1984 respondent was again transferred to St. Louis. After moving to St. Louis, appellant continued to cook the couple's dinner. He also periodically took the

respondent to work but did not seek outside employment.

Throughout the marriage, the couple's lifestyle improved and they had a significant amount of disposable income. They were able to purchase homes whenever respondent accepted a job transfer and the couple took many trips including visits to Europe. In addition, respondent generously and gratuitously provided her mother annually with support funds in the sum of $5,000.

At the time of trial, respondent had been working for Southwestern Bell for more than 15 years and was earning over $70,000 per year. Respondent's additional benefits from Southwestern Bell included vested pension benefits through the Southwestern Bell Corporation Management Pension Plan equal to $1,169.58 monthly payable at age sixty-five (65), as of March 1, 1988. Appellant's statement of income and expenses provides that he receives no income from employment, however he receives $75 per month in interest, and his share of the gross income on the previous year's Federal Income Tax Return was $1200.

It is with some interest that we note the gender roles of the parties in this marriage are reversed from the more traditional roles of husband and wife. In the present case the wife is the party who earned the lion's share of the income by working outside of the home during the marriage. The appellant is the party who remained at home throughout the majority of the marriage and did not work outside of the home for several years. However, certainly the sex of the parties should have no bearing on the division of marital property or on the allowance or prohibition of maintenance.

The trial court allocated $51,347 or 75.5% of the parties' marital property to respondent and $14,128 or 21.5% to appellant. The court granted appellant no maintenance but allowed appellant $500 for attorney's fees.

Appellant raises three points on his appeal. Appellant claims that the trial court abused its discretion by its distribution of the parties' marital property, abused its

discretion by awarding appellant no maintenance and abused its discretion by awarding appellant only $500 in attorney's fees.

The decree of dissolution of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *TBG v. CAG*, 772 S.W.2d 653, 654 (Mo. banc 1989).

Section 452.330 RSMo 1988 directs the trial court to divide the marital property in a just manner, after considering all relevant factors including the five factors set out in the statute, as follows:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for any reasonable periods to the spouse having custody of any children.

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

(3) The value of the non-marital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

There are two guiding principles inherent in § 452.330: "[F]irst property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and, second property division should be utilized as a means of providing future support for an economically dependent spouse." Krauskopf, A Theory for "Just" Division of Marital Property in Missouri, 41 Mo.L.Rev. 165 (1976).

When applying these guiding principles inherent in § 452.330 to the present case we find that the trial court abused its discretion in its division of marital property. We first look at the economic circumstances of each spouse at the time the division of property is to become effective. Throughout the course of the marriage, appellant has become economically dependent on the respondent. At the time of the dissolution of marriage, appellant was unemployed, had not been employed in his chosen field of journalism for fifteen years, and had not been employed full-time since 1978. Conversely, at the time of dissolution of marriage, respondent had elevated herself within the Southwestern Bell organization to a position directing press relations and was earning in excess of $70,000 per year. Additionally, respondent was the recipient of extensive employment benefits including vested pension benefits which equalled $1,169.68 monthly (at age 65) as of March 1, 1988, and a savings plan which at the time of trial had a total vested account balance of $9,968.85.

With regard to the second statutory factor, the contribution of each spouse to the acquisition of marital property, including the contribution of a spouse as homemaker, the trial court found that the respondent, for the greater part of the marriage, had been the sole financial support of the parties and the funds used to acquire the marital property had been earned almost solely by her. Also, the court found that the appellant made no substantial contribution to the marriage as a homemaker because he showed a marked disinclination to undertake the normal domestic duties of a homemaker, engaging only in those duties, such as cooking the evening meal, which he found fulfilling, stimulating and interesting.

■ Although appellant did not work outside of the home for the majority of the years of the marriage, he did have outside employment for nearly one-third of the marriage. For two additional years appellant drove respondent to work and picked her up from work in the evening. While the appellant's performance of traditional domestic chores was often times lax, he did prepare dinner for himself and respondent throughout the duration of the marriage. We are not finding that appellant's contributions entitled him to an equal division of the marital property, however, we do hold that the trial court's division of property is against the weight of the evidence and therefore an abuse of discretion.

In his second point appellant claims that the trial court erred and abused its discretion in awarding no maintenance to appellant. Appellant argues that although he is educated and possesses a degree in journalism and public administration, the fact that he is 40 years old and has not held employment in either of these fields for the past fifteen (15) years will have a negative effect on his ability to find employment in order to support himself. Appellant does not claim that he is completely unable to support himself. However, due to the extended period of time that appellant has been out of the work force in his field, he requires a period of rehabilitative maintenance during which time he can obtain the necessary education and retraining to allow him to gain satisfactory employment in the field of journalism. Appellant argues that he would require an additional two and one half or three years of education to take course work that would enable him to be self-supporting as a journalist.

We have said that maintenance is awarded when one spouse has detrimentally relied on the other spouse to provide the monetary support during the marriage. If the relying spouse's withdrawal from the marketplace so injures his/her marketable skills that he/she is unable to provide for his/her reasonable needs maintenance may be awarded. *Jamison v. Churchill Truck Lines, Inc.*, 632 S.W.2d 34, 36 (Mo.App. 1982). "Rehabilitative maintenance" should be awarded for a term reasonably sufficient to receive job training. *Doerflinger v. Doerflinger*, 646 S.W.2d 798 (Mo. banc 1983). Rehabilitative maintenance is appropriate where there is substantial evidence that the party seeking maintenance will or should become self-supporting. *Doerflinger* at 802.

We have reviewed the record before us and we find that the trial court did err and abuse its discretion in finding that the appellant failed to show that his fifteen year absence from the journalism field has injured his ability to secure employment therein at this time and earn a sum sufficient to meet his reasonable needs and that appellant wholly failed to establish his entitlement to maintenance under Mo.Rev. Stat. § 452.335 (1986).

Section 452.335 sets out the factors which the court shall consider in ordering maintenance. The second stated factor the court is to consider is the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment.

At trial appellant testified that he intended to enroll for a semester at the University of Texas in a program on Latin American Studies in order to enable him to re-enter journalism as a reporter in Latin America. He indicated that he wrote to several of the major newspapers in Florida and received a response from the Miami Herald which indicated that the appellant's plans for further education would be attractive credentials for a newspaper like the Miami Herald. Appellant further testified that because his most recent articles are fifteen years old, he needs to develop some fresh stories that have been written in the recent past to show editors that he is still able to write and report.

Appellant's need to acquire fresh skills in order to re-enter the field of journalism is reasonable. Journalism is a competitive field. Every year newly graduated students enter the job market with fine skills. If appellant is to be able to compete with these other graduates, it can certainly be expected that additional education would be beneficial. Appellant's plan to return to school in order to increase his marketability as a journalist would ensure that he become self-sufficient. Our disposition of the issues of marital property and maintenance is consistent with the generally accepted principles articulated by Professor Joan M. Krauskopf, i.e., that marriage is a shared enterprise and that maintenance should be utilized as a means of providing support for an economically dependent spouse until said spouse is self-reliant.

Appellant's third point is that the trial court abused its discretion and therefore erred in awarding to appellant the sum of only $500 as additional attorney's fees and costs. Section 452.355 RSMo 1986 provides:

The court may from time to time after considering all relevant factors including financial resources of both parties may order a party to pay a reasonable amount for the cost of the other party maintaining or defending any proceeding under Section 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

Appellant's attorney's fees totaled $2,940. His attorney testified that prior to trial appellant paid $1,500 toward her fee. Appellant testified that he removed this money from the parties' *joint* bank account at the time of separation. After considering all relevant factors, including the financial resources of the parties, the circuit court ordered that respondent pay $500 towards appellant's attorney's fees.

The Supreme Court has held that a trial court has broad discretion in the award of attorney's fees. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979). The circuit court could have reasonably found that respondent *should not be required to pay* a more substantial portion of appellant's attorney's fees. The circuit court's order that respondent contribute an additional $500 toward appellant's attorney's fees was not an abuse of discretion. Appellant's third point is denied.

This matter is remanded for further proceedings consistent with this opinion.

KAROHL, J., concurs.

CRANDALL, J., dissents in separate opinion.

CRANDALL, Judge, dissenting.

I dissent from that portion of the majority opinion which finds error in the division of the marital property and the denial of maintenance to husband. On both issues, I believe the trial court acted within its discretion.

If we accept the concept of marriage as a shared enterprise similar to a partnership,

husband had a negative impact on that partnership. Husband did not sacrifice his career for wife, rather he was a hindrance to her progress. On the issue of maintenance, husband has simply shown that he is unwilling, rather than unable, to support himself through appropriate employment.

For the foregoing reasons I would affirm the decree of dissolution.